# EXHIBIT 2

|  | Original - Court | 2nd copy - Plaintiff |
|---|---|---|
| Approved, SCAO | 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN<br>Chippewa JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS | CASE NO.<br>19-15842 CK |
|---|---|---|

Court address: 319 Court St, Sault Ste. Marie MI 49783  Court telephone no. 906-635-6360

Plaintiff's name(s), address(es), and telephone no(s).:
Krista Jones
16706 E HayPoint Rd
Sault Ste. Marie, MI 49783

v

Defendant's name(s), address(es), and telephone no(s).:
The Interlake Steamship Company
7300 Engle Road
Middleburg Heights
Ohio 44130
440-260-6900

Plaintiff's attorney, bar no., address, and telephone no.:
Krista Jones
16706 E HayPoint Rd
Sault Ste. Marie, MI
906-748-7512 In proper

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. Attached is a completed case inventory (form MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint. Two cases filed simultaneously regarding the same transactions
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☐ _____ Court, where it was given case number _____ and assigned to Judge _____.
The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk. **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| 11/26/2019 | 2/29/2020 | Jennifer Schmoll Guzall |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01  (8/18)  SUMMONS  MCR 1.109(D), MCR 2.102(B), MCR 2.104, MCR 2.105

PLAINTIFF

**SUMMONS**
Case No.

## PROOF OF SERVICE

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐ **OFFICER CERTIFICATE** OR ☐ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required)

Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required)

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with ______________________________
List all documents served with the summons and complaint

______________________________ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Fee | |
|---|---|---|---|
| $ | | $ | |
| **Incorrect address fee** | **Miles traveled** | **Fee** | **TOTAL FEE** |
| $ | | $ | $ |

Signature ______________________________

Name (type or print) ______________________________

Title ______________________________

Subscribed and sworn to before me on ______________ (Date), ______________ County, Michigan.

My commission expires: ______________ (Date) Signature: ______________________________ Deputy court clerk/Notary public

Notary public, State of Michigan, County of ______________________________

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with ______________ (Attachments)

______________________________ on ______________________________ (Day, date, time)

______________________________ on behalf of ______________________________
Signature

State of Michigan
Chippewa County

Krista Jones,

        Plaintiff

v

Hon James Lambros
Case # 19-15842-CK
Filed: _____

Interlake Steamship Company and
Marine Engineers Beneficial Association
District # 1-PCD,

        Defendants.
_____/

**RECEIVED**

NOV 2 6 2019

50TH CIRCUIT COURT
CHIPPEWA COUNTY CLERK

## Complaint and Jury Demand

### Introduction, Jurisdiction, and Venue

1. This is an action by an employee against an employer and a labor organization for the employer's breach of a collective bargaining agreement ("CBA") and practices, and the union's breach of its duty of fair representation, both in connection with the plaintiff-employee's being relieved of duty on May 30, 2019.

### Parties

2. Plaintiff Krista Jones lives at 9090 E Haypoint Road, Sault Ste. Marie, MI, 49783 in this county and until the above date was an employee of defendant Interlake Steamship Company ("Interlake").

3. Defendant Interlake Steamship Company is an employer at 7300 Engle Road, Middleburg Heights, Ohio, 44130, and does business in this county.

4. Defendant Marine Engineers Beneficial Association District # 1-PCD

("MEBA") is a labor organization or union. It is located at 444 North Capitol Street NW, Suite 800, Washington, DC, 20001, has offices at 1322 Old River Road, Suite 301, Cleveland, OH, 44113, and does business in this county.

**Background facts**

5. Interlake ships cargo around the Great Lakes. It has a fleet of seven ships. Jones's ship was the Stewart J. Cort, which carried iron ore between Duluth and Chicago through the Soo Locks.

6. Before coming to Interlake Jones had schooling and employment in the culinary field.

7. Jones hired on at Interlake in December 2011 as a second cook in the galley. In 2014 she was promoted to relief steward.

8. In March 2018 she became the permanent steward, or cook, working seven days a week. She joined, paid a $3000 initiation fee, and began dues to MEBA.

9. Defendants had negotiated a collective bargaining agreement ("CBA"), side letter, and associated practices which governed some of Jones's terms and conditions of employment.

10. Under the side letter, MEBA and Interlake agreed MEBA would not grieve or arbitrate violations regarding wages, safety, disparate treatment of similarly situated employees, and other fundamental terms and conditions of employment, for cooks.

2

11.  Unlike the other MEBA members under the CBA Jones was not licensed.

12.  Under article XIII section 1(c)(2) of the CBA Jones's continuous service could be broken by "termination due to discharge for just cause," or for several other reasons which are listed but inapplicable to this dispute.

13.  Though a willing member, Jones has not been a MEBA activist, has never sought or served in union office or filed a grievance, and is unfamiliar with the grievance procedure, appeal procedures, and other union practices.

14.  She was a salaried employee with no set reporting time, except she had to be in the galley till 5:00 pm.

15.  Other than a verbal warning in about 2015, Interlake never disciplined Jones for anything, and her annual appraisals were satisfactory or better.

**Jones is relieved of duty.**

16.  On May 29, 2019, Jones's first day back from a vacation, she worked on the Cort, cooking all day.

17.  The captain was Greg Sipper to whom she reported while he was on the ship. He was not on the ship during her work that day. Otherwise her supervisor was Jason Toth at company offices in Ohio.

18.  A 6:00 pm sailing for Chicago was posted on the chalk board by the ladder, which is raised and lowered for people to board and leave the ship.

3

19. About 5:40 pm she spoke with Tom Greenleaf, a wheelsman who was operating the ladder. The ship was loading ore. Greenleaf told Jones the loading would take time and despite the chalk board posting the ship would not sail for an hour and a half. She had written her phone number on the chalk board, told Greenleaf it was there, and asked if he would give her a one-hour notice call (similar to a call typically given to Sipper), because she was going up the street to buy a clock. He said yes.

20. A wall clock was needed for the galley because the old one had broken during her vacation. A galley clock is necessary to time cooking and be ready for mealtimes. At a store she paid $10 out of pocket for a battery-operated model.

21. Jones returned with the clock to the ship at 6:54 pm. No phone call had come but he Cort was already leaving as she walked up.

22. She called supervisor Toth in Cleveland. He called back later and said not to worry and everything would be ok. Without naming them, he said three other people had missed another Interlake ship, the Lee Tregurtha, a week earlier in Marquette, this happens all the time, it is not a big deal, and people don't get fired for it. He said to get a hotel room for the night.

23. Jones learned later from Theresa Onizchak, the Tregurtha's second cook, that the three left behind in Marquette had been let back on the Tregurtha at the Soo Locks.

24. The Cort was not scheduled back to Duluth for about a week. Her purse

4

and ID were still aboard the ship, as were her other clothes and personal items. Instead of getting a hotel and driving the next day to Sault Ste. Marie (her home), she decided to drive there through the night and meet the downbound Cort at the Locks. She and Toth texted each other as she drove home. He suggested, but did not instruct her, to get a hotel if she had any issues.

25. The next morning, May 30, she called Toth and Paul Christensen, Interlake's head of operations. They said the company was relieving her of duty, supposedly because of complaints from crew members. Christensen added that he hoped the clock was worth it because she lost her job because of it. Jones stated the company's action was unfair.

26. At the Locks Interlake replaced Jones with Susan Doorman as the Cort cook.

27. When the Cort next came downbound through the Locks a week later, Jones sent the clock aboard via the grub boat. Interlake has not reimbursed her for it.

28. At the same time she was able to retrieve her clothes and purse and ID.

29. Interlake issued Jones no written notice of its action or the reasons.

30. About a week later Interlake falsely reported to the state unemployment office she had been laid off.

**Comparators**

31. Toth's unnamed three employees who missed the ship in Marquette returned to work with no discipline or discipline less than discharge.

32. In January 2019 acting chief Mark McTaggart missed the Cort in Duluth because he had returned to the ship drunk was sent to rehab at a hospital. Within a couple of weeks he returned to work as a first engineer on a different Interlake ship, the James L. Overstar.

33. In the summer of 2018 second cook Tom Moore missed a different Interlake ship, the James L Barker, because of an arrest for drunk driving in a company vehicle. He served jail time. A year later he came back to work on the Cort as a second cook.

### Jones's attempt and the union's refusal to grieve

34. MEBA did not maintain a representative on the Cort or in the fleet.

35. On May 31 Jones called Mark Gallagher, MEBA's contract rep rep, to explain the facts and say she needed a grievance. Gallagher said nothing about Jones needing to fill out a "grievance form" on MEBA's website. He made notes and said he would forward them to MEBA Branch Agent Tracy Burke, who had grievancing authority.

36. The same day she called Burke and again explained the facts. He also said nothing about her needing to submit a grievance form. Rather, he said because she missed the ship the case was closed.

6

37. On June 4 she called Gallagher and again reviewed the facts.

38. On June 13 Gallagher emailed Jones saying Toth told him he would send additional information to substantiate she had performance-related issues from the captain and crew.

39. On or about June 28 she received a copy of the CBA in the mail from MEBA after mailing a $25 money order for it.[1]

40. Gallagher referred Jones to Jason Callahan, MEBA's Atlantic Coast Vice-President, who is above Tracy Burke.

41. On July 2 she talked with Callahan. She reminded him her good appraisals.

42. At Callahan's request, on July 8 she provided favorable statements and emails from employees and passengers she had cooked for.

43. On July 31 she spoke with Callahan again. He said she was a terrible cook, and the statements were not enough to overturn the termination.

44. On August 5 she emailed Callahan asking that a grievance be processed to arbitration.

45. He emailed back asserting she had "miss[ed] the grievance deadline" but even despite this the union could not prevail at arbitration, listing several reasons, none of which referenced the side letter or its prohibition of grievances for cooks in these circumstances.

---

1   Compare 29 USC 414.

46. Promptly she appealed to the DEC.

47. On August 17 she emailed MEBA president Marshall Ainley noting that she had requested a grievance from Gallagher on May 31.

48. On August 19 she emailed Ainley asking for all Interlake-MEBA correspondence emails pertaining to her case. He acknowledged the request by return email but sent her nothing.

49. On August 30 the DEC denied her appeal, arguing:

1. the company had counseled her regarding poor performance (which was untrue),

2. she had ignored the posted sailing board (which was untrue),

3. she had gone home instead of getting a hotel in Duluth to be billed to the company (which was untrue and in any case irrelevant),

4. union officials had directed her to fill out a grievance form from the union website (which was only true in that she was informed of the website on August 5 but she had promptly complied when the union sent her a link to it),

5. the union had no record of any grievance other than one she submitted after receiving the website link, and

6. under the side letter the union cannot grieve terminations for cooks.

## Claims

50. Interlake's relieving of Jones of duty on May 30 lacked just cause under company past practices and the CBA, in violation of 29 USC 185(a), as was also its failure to reimburse her for the clock.

51. MEBA's failure to provide Jones with grievance documents, to which she

8

had a right if they existed under *Branch 529 Letter Carriers (USPS)*, 319 NLRB 879 (1995), means they did not exist, which in turn means that MEBA did not invoke the grievance procedure with Interlake.

52.  MEBA's negotiation of the side letter in 2013, as well as its invocation of it in 2019, violated its duty of fair representation toward cooks, insofar as it arbitrarily and perfunctorily refuses to represent them as to wages, safety, disparate treatment of similarly situated employees, and other fundamental terms and conditions of employment.

53.  MEBA's refusal to grieve and arbitrate her termination, and its requirement that she pay for a copy of the CBA were arbitrary and perfunctory in violation of its duty of fair representation.

54.  As a result Jones has lost significant sums of wages and benefits, exceeding $35,000 to date.

**Relief requested**

55.  Wherefore Jones asks the court to try the facts of this case before a jury, and order her reinstatement, and backpay, interest, and benefits commensurate with the rank, seniority, promotions, and raises Jones would have attained had she not been fired, including:

   a.   compensation for any tax penalty she might incur due to receiving an unusual amount of backpay income in one year,

b. voiding the side letter, albeit retaining Jones' ability to enforce any terms in it favorable to her,[2]

c. compensation for the clock,

d. compensation for the CBA,

e. costs and any attorney fees she might incur, and

f. any other equitable relief to which she might be entitled.

Respectfully submitted,

*[signature]*

Krista Jones, In Pro Per
9090 E Haypoint Road
Sault Ste. Marie, MI 49783
906-748-4512
*krista_payment_64@hotmail.com*

Dated: Nov 25, 2019

---

2   *National Licorice Co v NLRB*, 309 NLRB 350, 365 (1940); *Associated Truck Lines*, 239 NLRB 917, 921 (1978), enf'd 653 F2d 141 (CA6, 1981).

FORM NLRB-501 (2-18)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

DO NOT WRITE IN THIS SPACE

| Case | Date Filed |
|---|---|
| | |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | b. Tel. No. |
|---|---|---|
| The Interlake Steamship Company | | 440 260 6900 |
| | | c. Cell No. |
| | | f. Fax. No. |
| d. Address (Street, city, state, and ZIP code) | e. Employer Representative | |
| 7300 Engle Road, Middleburg Heights, OH 44130 | Mark Barker, Owner | g. e-mail |
| | | h. Number of workers employed: 200 |
| i. Type of Establishment (factory, mine, wholesaler, etc.) | j. Identify principal product or service | |
| Maritime shipping | Maritime shipping | |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) (2), (3), (5) of the National Labor Relations Act, and thest unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Within the six months preceding the filing of this charge, the above-named Employer, by its officers, agents, and representatives, has interfered with, restrained and coerced employees in the exercise of their rights guaranteed by Section 7 of the Act by discharging Krista Jones because she engaged in Union and protected concerted activities, including by serving as a Union steward.

By these and other acts, the above-named Employer has interfered with, restrained, and coerced employees in the exercise of their rights under Section 7 of the Act.
Amended charge: See attachment.

**3. Full name of party filing charge** *(if labor organization, give full name, including local name and number)*
Krista Jones

| 4a. Address (Street and number, city, state, and ZIP code) | 4b. Tel. No. |
|---|---|
| 9090 East Haypoint Road, Sault Ste. Marie, MI 49783 | |
| | 4c. Cell No. 906 748 4512 |
| | 4d. Fax No. |
| | 4e. e-mail krista_payment_64@hotmail.com |

**5.** Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*
N/A

### 6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| Ellis Boal | for Krista Jones | Tel. No. 231-547-2626 |
|---|---|---|
| *(signature of representative or person making charge)* | *(Print/type name and title or office, if any)* | Office, if any, Cell No. |
| | | Fax No. |
| Address 9330 Woods Road, Charlevoix, MI, 49720 | Date Nov 26, 2019 | e-mail ellisboal@voyager.net |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

Amended CA charge for Krista Jones, 11/26/19:

In 2013 the parties negotiated a side letter to the CBA in which the union pledged to refuse to bargain for its member cooks over certain mandatory subjects, including wages, safety, disparate treatment of similarly situated employees, and other fundamental subjects, and the parties continue to enforce the side letter in regard to the charging party's being relieved of duty on May 30, 2019.

Additionally, the bargaining unit may include one non-supervisory member (the charging party) while all other covered employees may be supervisory.

Additionally, the CBA requires covered employees to be union members, not merely agency fee payers.

Amended CB charge for Krista Jones, 11/26/19:

In 2013 the parties negotiated a side letter to the CBA in which the union pledged to refuse to bargain for its member cooks over certain mandatory subjects, including wages, safety, disparate treatment of similarly situated employees, and other fundamental subjects, and the parties continue to enforce the side letter in regard to the charging party's being relieved of duty on May 30, 2019.

Additionally, the bargaining unit may include one non-supervisory member (the charging party) while all other covered employees may be supervisory.

Additionally, the CBA requires covered employees to be union members, not merely agency fee payers.