UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KRISTA JONES,

Plaintiff,

v.

THE INTERLAKE STEAMSHIP COMPANY, et al.,

Defendants.
_________________________________/

Case No. 2:19-cv-00255

Hon. Robert J. Jonker
Chief U.S. District Judge

**REPORT AND RECOMMENDATION**

## I. Introduction

In May 2019, Plaintiff Krista Jones worked for the Interlake Steamship Company ("Interlake") as Chief Steward onboard the Motor Vessel (M/V) *Stewart J. Cort* (the *Cort*), which is a 1,000-foot-long iron ore freighter. On May 29, 2019, Jones missed the *Cort*'s departure from Superior, Wisconsin. The next day, she was fired.

At the time of her termination, Jones was a member of a union: the Marine Engineers' Beneficial Association ("MEBA"). The terms of her employment were governed by a 2013 collective bargaining agreement ("CBA") between Interlake and MEBA and by a 2013 Side Letter agreement. The CBA required Interlake to have provided "just cause" to terminate members of MEBA, but the Side Letter agreement excluded Chief Stewards and Master from this provision.

Jones sues Interlake and MEBA for violations of the Labor Management Relations Act ("LMRA"). Specifically, Jones alleges (1) a hybrid Section 301 claim

against both Defendants, asserting first that Interlake breached the CBA by terminating Jones without just cause, and second that MEBA violated its duty of fair representation by failing to adequately represent Jones in a grievance against Interlake, (2) a claim against MEBA, asserting that MEBA also breached its duty of fair representation by negotiating the 2013 Side Letter agreement that excluded Chief Stewards from many of the protections of the CBA, (3) a claim that MEBA violated Jones's right to a copy of her CBA under 29 U.S.C. § 414 by making her pay $25 for a copy, and (4) claims that either or both Defendants violated unspecified state contract laws.

On March 30, 2020, both Defendants moved separately to dismiss all claims under Fed. R. Civ. P. 12(b)(6). (ECF Nos. 32 (MEBA's motion), 33 (Interlake's motion).) Defendant MEBA moved, in the alternative, for summary judgment under Fed. R. Civ. P. 56.[1] Jones filed a response and cross-motion for summary judgment on April 20, 2020. (ECF No. 37.) Both Defendants filed replies. (ECF Nos. 39, 40.) Additional responsive pleadings relating to the summary judgment motions were also filed. (ECF Nos. 41-44.[2])

For the reasons discussed below, the undersigned respectfully recommends that this Court grant Defendants' motions to dismiss with respect to all of Jones's

[1] Since discovery has not yet been completed in this case, the undersigned will only address Defendants' motions to dismiss in this Report and Recommendation.

[2] Jones's reply to MEBA's response to her motion for summary judgment – ECF No. 41 – was later withdrawn. (ECF No. 42.)

claims except her claim under § 414. The undersigned respectfully recommends that this Court allow Jones's § 414 claim to go forward.

## II. Factual Background

At the time of her termination on May 30, 2019, the terms of Jones's employment as a Chief Steward with Interlake were subject to a 2013 CBA between Interlake and MEBA. (ECF No. 28, PageID.98.) The CBA included and incorporated a Side Letter agreement between the parties that specifically addressed Chief Stewards.[3] (*Id.*, PageID.106.) The Side Letter agreement excluded Chief Stewards and Masters from a number of provisions of the CBA, including, according to MEBA and Interlake, protections from discharge without just cause, as well as access to the grievance process except in limited circumstances (which did not include termination). (*Id.*, PageID.99; ECF No. 32-2, PageID.178.) The "just cause" and grievance provisions were available to most other classifications of Interlake employees covered by the CBA. (ECF No. 28, PageID.98.)

Interlake began employing Jones in cooking-related roles as early as 2011. (*Id.*) In March of 2018, Interlake promoted Jones to Chief Steward. When Jones was

---

[3] The CBA and Side Letter agreement are referenced in Jones's complaint and are central to her allegations. (ECF No. 28, PageID.98-99, 106.) These documents are attached to Defendants' motions to dismiss. (ECF Nos. 32-1, 32-2, 33-1.) Thus, the Court will consider these documents in assessing the motions to dismiss. *See Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (stating that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim") (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993)).

promoted, she joined MEBA, paid an initial fee, and began paying union membership dues. (*Id.*)

On May 29, 2019, Jones was working her first day back from vacation aboard the *Cort* when the ship posted a 6 P.M. sailing time on the chalk board, which was the conventional means of conveying such information. (*Id.*, PageID.100.) Twenty minutes before the scheduled departure, time Jones spoke with a wheelsman who stated that the ship would not set sail until roughly 7 P.M. (*Id.*) Jones wrote her telephone number on the board, asked the wheelsman to give her a one-hour notice call before the ship left, and disembarked off the *Cort* to head into town. (*Id.*) Jones alleges that she went into town to buy a new wall clock to use on the ship for keeping meal times consistent. Jones paid $10 out of pocket for this clock. (*Id.*)

Jones alleges that at 6:50 P.M. she returned to the dock and began walking towards the *Cort*. By this time, the *Cort* had already departed without Jones on board. (*Id.*, PageID.101.) Jones alleges that the wheelsman told the Captain that Jones was not on board and that she had requested a notice call, but that the Captain had decided to depart anyway. (*Id.*) The next morning, on May 30, Interlake supervisors spoke with Jones over the phone and fired her, citing her missing ship's movement and past complaints from the crew as the reasoning. (*Id.*)

Jones contacted her MEBA representative on May 31, one day after being fired. (*Id.*, PageID.103.) The MEBA representative took notes and spoke with several other MEBA representatives over the next few months. Jones alleges that she did not get a copy of her CBA until around June 28. She says she had to pay a $25 fee to receive

a copy. (*Id.*) On August 5, over two months after the firing, and after Jones had been in contact with several different MEBA agents, a MEBA representative told Jones that MEBA would not pursue any claims. (*Id.*, PageID.104.) Jones appealed this decision but the appeal was denied on August 30, 2019.

## III. Additional Procedural History

Jones filed her complaint in the Circuit Court of Michigan for Chippewa County on November 26, 2019, and Defendant Interlake removed the action to this Court with the consent of Defendant MEBA. (ECF No. 1, PageID.1.)

Jones also filed a related case against Interlake and MEBA. (*Jones v. Interlake Steamship Co., et al.*, W.D. Mich. Case No. 2:19-cv-254.) This case was dismissed with the consent of the parties.

On February 26, 2020, Jones filed her First Amended Complaint. (ECF No. 28.)

On March 30, 2020, Defendant MEBA moved to dismiss, arguing that Jones failed to state a "hybrid" claim because Interlake did not violate the CBA and that Jones's standalone breach of duty of fair representation claim was time-barred. (ECF No. 32, PageID.124.) MEBA moved, in the alternative, for summary judgment, claiming that the union had fulfilled its duty of fair representation during both the grievance process after Jones was terminated and during its 2013 negotiations of the CBA and Side Letter. (*Id.*, PageID.127.) At the same time, Interlake moved to dismiss on similar grounds. (ECF No. 33, PageID.182.)

On April 20, 2020, Jones moved for summary judgment against MEBA, generally reasserting her allegations and arguments with some additional affidavits of Interlake employees who were not discharged for missing the ship attached. (ECF No. 37, PageID.251.) At the same time, Jones filed her response to Defendants' motions and filed a motion for Limited Initial Discovery. (*Id.*) MEBA and Interlake replied on April 28. (ECF No. 39; ECF No. 40.) Other responsive pleadings followed. (ECF No. 41-44.) Discovery deadlines have been extended due to these pending dispositive motions. (ECF No. 51.)

**IV. Motion to Dismiss Standard**

The Federal Rules of Civil Procedure provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Put differently, if plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff.

*Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

**V. Hybrid Claim**

The undersigned concludes that Jones's "hybrid" claim must be dismissed because the alleged facts show that Interlake did not breach the CBA. Ordinarily, a union member "is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement" and "he will be bound by the result according to the finality provisions of the agreement." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163–64 (1983). The Supreme Court has, however, "recognized that this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Id*. at 164. In such a case, "an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id*. This "hybrid" claim combines separate,

interdependent actions for the breach of the CBA by the employer and the breach of the duty of fair representation by the union. *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1238-39 (6th Cir. 1993).

Under § 301 of the Labor Management Relations Act ("LMRA"), codified as 29 U.S.C. § 185, federal courts have jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization representing employees," which includes suits by individual employees. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562 (1976). Suits where employees allege both that (1) the employer breached the collective bargaining agreement, and (2) that the union breached its duty of fair representation are "hybrid claims" in which the employee must prove *both* claims in order to succeed against either defendant. *Garrish v. Int'l Union United Auto., Aerospace, & Agric. Implement Workers of Am.*, 417 F.3d 590, 594 (6th Cir. 2005). A plaintiff must prove both in order for either the employer or the union to be held liable, even though the claims are distinct. *Young v. Auto Workers Local 651*, 686 F. App'x 304, 307 (6th Cir. 2017). Recently, the Sixth Circuit Court of Appeals upheld the dismissal of a hybrid claim because the plaintiff failed to identify which provision of the CBA the employer had violated, even in the face of accusations of bribery and collusion between the employer and union. *Swanigan v. FCA US LLC*, 938 F.3d 779, 784 (6th Cir. 2019).

Jones states in her complaint that Interlake violated the CBA by terminating her employment without just cause and by failing to reimburse her for the clock that she purchased. (ECF No. 28, PageId.105.) Reading the CBA and Side Letter

together, it is clear that Jones, as a Chief Steward, was not protected by the just cause provision of the CBA. (*See* ECF No. 32-1, PageID.143-45 (Article VI of CBA); ECF No. 32-2.) The CBA provision in question appears in Article VI(d) and reads as follows:

> (d) Discipline
>
> It is agreed that the Company cannot discipline or discharge any Officer covered by this Agreement without just cause. When an Officer is discharged, the Company will provide a written statement to the Officer and a copy to the Union within five (5) days setting forth the reasons for discharge.

(ECF No. 32-1, PageID.145).

The Side Letter agreement does not extend the just cause provision to Chief Stewards or Masters. Instead, the Side Letter agreement identifies specific provisions of the CBA that apply to Chief Stewards and Masters. The Side Letter agreement is shown below.




Robert F. Dorn
*Senior Vice President*

November 22, 2013

Michael B. Jewell
MEBA, District No. 1-PCD (AFL-CIO)
444 North Capital Street, N. W.
Suite 800
Washington, DC 20001-1570

Dear Mike:

It is agreed that the Company will employ a Master and a Chief Steward (Officers) on all vessels covered by the August 1, 2013 Collective Bargaining Agreement (Agreement), simultaneously executed herewith, between the Parties. It is further agreed that only Articles II Union Membership, V No Strikes/No Lockouts, VIII Family Leave Vacation Benefits, X Sailing Season Bonus, XI Transportation, XIII Continuity of Service, XVI MEBA Benefits Plans, excluding the MEBA Training Plan and XVII Effective Date & Duration shall apply. The Company shall set wages and future increases, which if any shall be effective on August 1st of each year of this Agreement, for the Officers and advise the Union of same. Article VI Grievance Procedure shall apply only to alleged violations of VIII Family Leave Vacation Benefits, X Sailing Season Bonus, XI Transportation, XIII Continuity of Service, and XVI MEBA Benefits Plans.

Only the Daily Rates of pay for Officers, covered herein, shall be used for calculating pension benefits in accordance with the MEBA Pension Plan Rules & Regulations in effect at the time the Officer retires. No special payments, supplements, or lump sum payments shall be used in any benefit calculation or other compensation calculation.

Agreed to this 22nd Day of November, 2013.

Company:

[signature]
Robert F. Dorn
Senior Vice President

Union:

[signature]
Michael B. Jewell
MEBA, District No.1-PCD (AFL-CIO)

(ECF No. 32-2, PageID.178).

The Side Letter agreement states that only Articles II, V, VIII, X, XI, XIII, XVI (with limitations), and XVII of the CBA apply to Chief Stewards and Masters. The Side Letter agreement goes on to note that Article VI grievance applies only to alleged violations of specific, enumerated parts of the CBA. Since Article VI(d) does not apply to Chief Stewards, Interlake's decision to terminate Jones without providing just cause was consistent with their obligations under the CBA, and Jones was not entitled to the protections of Article VI(d).

Jones also argues that past practices can be incorporated into a CBA and that courts should give force to past practices that "inform the content" CBA as long as the CBA does not explicitly say otherwise. (ECF No. 37, PageID.281.) Here, as a result of the Side Letter agreement, only specific parts of the CBA apply to Chief Stewards. The just cause provision in Article VI(d) clearly is not one of those provisions. As a result of the express terms of the CBA and Side Letter agreement, the Court cannot find any way to interpret past practices in a way that extends the just cause provision to Jones. In addition, the cases Jones uses in support of this argument are not on point. Jones points to no case, and the undersigned has found none, where courts have ruled that past practices should supersede the specific terms of a bargained-for CBA.

As outlined above, to state a Section 301 hybrid claim, Jones must allege facts showing (1) that Interlake breached the CBA, and (2) that MEBA violated its duty of fair representation with respect to grievance procedures associated with the breach. The undersigned concludes that Jones has failed to state a Section 301 hybrid claim

against Interlake because the just cause provision of the CBA did not apply to employees in her position.[4]

Accordingly, the undersigned respectfully recommends that this Court dismiss Jones's Section 301 hybrid claim.[5]

## VI. Claim Against MEBA for Negotiating the Side Letter Agreement

Jones's standalone duty of fair representation claim against Defendant MEBA, as alleged in her first amended complaint, is barred by the statute of limitations. Unions have a duty to represent all members fairly in both contract administration and negotiation. *Air Line Pilots Ass'n., Intern. v. O'Neill*, 499 U.S. 65, 77 (1991). This duty has been judicially inferred from the statutory grant of a union's exclusive power to represent all the employees of a bargaining unit. 29 U.S.C. § 159(a); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337 (1953); *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 202 (1944). A union's statutory duty to provide to employees a copy of their CBA if they request one under 29 U.S.C. § 414 is legally distinct from a union's duty of fair representation, and a violation of the former is not necessarily indicative of a violation of the latter. *Simo v. Union of Needletrades, Indus. & Textiles Employees, Southwest Dist. Council*, 322 F.3d 602, 616 (9th Cir. 2003). Hybrid claims, standalone duty of

---

4 The Undersigned also notes that although the Side Letter agreement allows Chief Stewards and Masters to utilize the Article VI grievance procedure in some circumstances, termination of employment is not one of those circumstances. Thus, to the extent Jones is bound by the CBA and the Side Letter agreement, MEBA did not have authority to pursue a grievance on her behalf and would not violate its duty of fair representation by not doing so.

5 Regarding the reimbursement for the clock, Jones points to no provision of the CBA that would entitle her to such a reimbursement, nor did the undersigned find one.

fair representation claims, and claims under 29 U.S.C. § 414 are all subject to a six-month statute of limitations. *DelCostello*, 462 U.S. at 169-170 (1983); *Baker v. General Motors Corp.*, 745 F. Supp. 1275, 1278 (N.D. Ohio 1990); *DeShelter v. FCA U.S. L.L.C.*, 790 F. App'x 664, 672 (6th Cir. 2019) (applying the six-month statute of limitations to both a hybrid § 301 claim and a standalone 29 U.S.C. § 159 claim).

**A. Statute of Limitations**

Generally, cases alleging a failure of representation in negotiations "should [be] brought within six months of that [negotiation] date." *Ratkosky v. United Transp. Union,* 843 F.2d 869, 873 (6th Cir. 1988). However, these claims are subject to a limited discovery rule and thus begin to accrue "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000 (6th Cir. 1994). The inquiry is an "objective" one, based on what claimants should have reasonably known. *Id.* Courts typically place a strict onus on union members to be familiar with the agreements that apply to them. *See Smith v. Standard Oil Co.*, No. 85-4001, 1986 WL 18105, *2 (6th Cir. Oct. 30, 1986) (holding that union members are "charged with knowledge of the terms of the collective bargaining agreement"); *Rogers v. Board of Education of Buena Vista Schools*, 2 F.3d 163, 167 (6th Cir. 1993) (holding a union member should have known the requirements of the union constitution as it "is a written document, which plaintiff should have reviewed to ascertain his rights under it"); *Young*, 686 F. App'x at 308 (holding that "ignorance of the [CBA requirement] is no excuse") (internal citations omitted).

The six-month statute of limitations bars Jones's stand-alone duty of fair representation against MEBA. (ECF No. 28, PageID.105.) Jones's claim accrued when she, through "reasonable diligence," should have discovered that the CBA and Side Letter did not require just cause for the firing of Chief Stewards and, thus, showed that the union may have violated a duty of fair representation. As noted, a union member is generally charged with having "knowledge" of their CBA requirements and terms. *Smith*, 1986 WL 18105 at *2. Assuming facts most favorable to Jones, she joined the union as late as March of 2018.[6] (ECF No. 28, PageID.98.) Since a union member is charged with knowledge of their union's CBA, Jones's arguments that she was "unfamiliar with the grievance procedure" and that receiving the CBA and Side Letter in June was her "first notice" of their contents are unpersuasive. (ECF No. 37, PageID.277.) Thus, the claim's statute of limitations began running in March of 2018 when Jones joined the union and when she should have acquired knowledge of her CBA. Her claim then expired six months later, sometime in the early fall of 2018, well before this suit was filed on November 26, 2019. (ECF No. 1, PageID.1.) Therefore, Jones's claims are only timely if the facts alleged constitute a continuing violation or if she can show cause for equitable tolling of the statute of limitations. For the reasons explained below, the undersigned concludes that neither situation is applicable here.

---

6 MEBA contends Jones was subject to the CBA as early as 2014, when she became a relief cook for Interlake, because that was when she held her first bargaining position. (ECF No. 32, PageID.127.)

**1. Continuing Violation**

Jones argues that MEBA's continued enforcement of the CBA and Side Letter into the present constitutes a continuing violation which would make her claim timely. (ECF No. 37, PageID.278.) The continuing violation doctrine allows a claim to be brought alleging conduct past the limitations period if the court "find[s] that the initial actionable injury continued beyond the expiration of the limitations period." *Noble*, 32 F.3d at 1000. Courts have distinguished between situations where conduct "within the six-months limitation period in and of [itself] may constitute . . . unfair labor practices," and situations where conduct within the six-moths limitations period can only be deemed unfair through "reliance on an earlier unfair labor practice." *Id.* at 1001 (quoting *Machinists Lodge Local 1425, et al. v. N.L.R.B.*, 362 U.S. 411, 416-417 (1960)). The latter situation is not a continuing violation, as this would "cloak with illegality that which was otherwise lawful." *Id.* To allow such claims to advance would be to "in effect . . . revive a legally non-cognizable unfair labor practice." *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 306 (7th Cir. 1983). Consequently, courts only recognize those earlier categories of claims which encompass cases where "wrongful activities continue into the present" and cases where there is a "longstanding and demonstrable policy of discrimination." *Bowerman v. Int'l Union Local No. 12,* 646 F.3d 360, 366 (6th Cir. 2011).

Further, courts have ruled that the enforcement of a CBA, which is not alleged unlawful except in reference to an earlier unfair labor practice, cannot be the basis for applying the continuing violation doctrine. *Machinists*, 362 U.S. at 419 (holding

that the enforcement of a CBA, which would only be unfair in reference to the CBA's original unlawful execution, is not an example of a continuing violation); *Adkins v. General Motors Corp*, 573 F. Supp. 1188, 1193 (S.D. Ohio 1983) (holding that "the mere fact that [unions] are continuing to implement allegedly improper collective bargaining agreements . . . does not convert Plaintiffs' [claims] into a continuing violation").

Jones alleges that while the negotiation of the CBA and Side Letter occurred in 2013, the CBA's "continued existence" and "application of it against . . . Jones" constitutes a continued violation. (ECF No. 37, PageID.278.) The undersigned finds Jones's argument unpersuasive for several reasons. Firstly, Jones is not alleging a longstanding policy of discrimination nor a case where wrongful activities have continued into the present. Instead, Jones is arguing that there is a longstanding CBA where the union failed to represent Chief Stewards fairly when they did not negotiate "just cause" termination provisions for them. (ECF No. 28, PageID.106.) But, MEBA's continued reliance on the CBA is not an unfair labor practice in and of itself as they were merely following the terms of the existing CBA.

This case is similar to *Machinists*, where the Court found that although the union was using a CBA that was enacted unfairly, the union's continued use of the CBA outside of the limitations period did not constitute a continuing violating. Here, the undersigned finds that while the negotiation of the 2013 CBA and Side Letter agreement could arguably be a breach of MEBA's duty of fair representation, the

enforcement of this CBA is not be a continuing violation. *Adkins*, 573 F. Supp. at 1193; *Machinists*, 362 U.S. at 419.

**2. Equitable Tolling**

Jones also argues that Defendant MEBA obscured her access to the CBA by unlawfully requesting monetary payment in order to view a copy of the CBA.[7] (ECF No. 37, PageID.277-278.) Courts have found that equitable tolling is available in cases where plaintiffs can prove that the "defendant union fraudulently concealed" something that prevented plaintiff from discovering their claims. *Long v. General Motors Corp.*, 19 F. App'x 200, 202 (6th Cir. 2001). The doctrine of fraudulent concealment is available when (1) defendants "concealed the conduct that constitutes the cause of action," (2) this "concealment prevented plaintiff from discovering the cause of action within the limitations period," and (3) plaintiff "exercised due diligence in trying to find out about the cause of action" until the eventual discovery. *DeShelter*, 790 F. App'x at 670 (internal citations omitted). The "burden of proving the elements of fraudulent concealment is upon plaintiff." *Pinney Dock and Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1465 (6th Cir. 1988). In equitable tolling cases, the concealment must actually prevent timely discovery, such that without the alleged concealment, plaintiff would have "discover[ed] the cause of action within the limitations period." *DeShelter*, 790 F. App'x at 672.

---

[7] Jones does not refer explicitly to equitable tolling, however, her assertions that MEBA's $25 fee is a breach of DFR can best be understood as an equitable tolling issue.

Jones claims that although she tried to obtain copies of the CBA, the union requested a $25 fee to send her a copy. (ECF No. 37, PageID.278.) Jones further alleges that MEBA's fee constitutes a violation of 29 U.S.C. § 414, which is "supposed to facilitate understanding" of CBAs. *Id.* However, in order for an action to be equitably tolled under the doctrine of fraudulent concealment, MEBA's alleged concealment by charging a $25 fee must have "prevent[ed] plaintiff from discovering the cause of action within the limitation period." *DeShelter*, 790 F. App'x at 671. Assuming facts most favorable to Jones, she joined the union in March of 2018, with her claims expiring in fall of 2018. (ECF No. 28, PageID.98.) Jones did not request a copy of the CBA, nor did she encounter the $25 payment requirement, until 2019.[8] (*Id.*, PageID.103.)

If Jones's limitations period for discovering the terms of the CBA expired six months after she joined the union, then the claim had already expired before MEBA's alleged concealment first occurred.[9] Jones failed to exercise "due diligence" in uncovering the alleged cause of action during the limitations period. As such, the undersigned concludes that the alleged violation of 29 U.S.C. § 414 does not constitute evidence of concealment that might warrant equitable tolling.

---

[8] Jones contends that she made a "diligent effort" to obtain the CBA during 2019, but she does not allege that she made any attempts to obtain the CBA in 2018. (ECF No. 37, PageID.277.)

[9] Jones does not allege any facts suggesting that this behavior occurred within the statutory limits nor any evidence of her exercising due diligence to obtain the CBA during that time. If Jones alleged both that MEBA charged fees within the statutory period and that Jones exercised due diligence to obtain a copy of the CBA but was thwarted by the paywall, then the court could consider whether MEBA's charging of a fee for a copy of the CBA would constitute concealment.

In summary, the undersigned concludes that Jones's claim against MEBA for breach of duty of fair representation in negotiating the Side Letter in 2013 is time-barred. Accordingly, the undersigned respectfully recommends dismissal of this claim.

**B. MEBA's Potential Breach**

Though the undersigned finds that Jones's claim against MEBA for breach of duty of fair representation is time-barred, MEBA's alleged actions would merit closer examination if they fell within the statute of limitations. A union violates its duty of fair representation when it is "hostile or discriminatory" towards any members, when it negotiates with employers "in bad faith," or when it fails to "avoid arbitrary conduct." *O'Neill*, 499 U.S. at 76. Most crucial to the case at hand, and the type of conduct alleged by Jones in her complaint, is whether MEBA's willingness to negotiate away an array of protections for Chief Stewards, including protection against discharge without just cause, was the result of "arbitrary conduct." The "final product of the bargaining process" is only considered evidence of arbitrary conduct "if it can be fairly characterized as so far outside a wide range of reasonableness that it is wholly irrational." *Id.* at 78, quoting *Ford Motor Co.*, 345 U.S. at 338. Union actions are "arbitrary only when [they are] irrational, when [they are] without a rational basis or explanation." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998). The fact that a union makes a deal that, in retrospect, is clearly a bad one, is not enough to find that the union was "irrational." *Id.* at 79. In general, courts give broad discretion to unions regarding the substance of their negotiations, which can

often justifiably result in different protections for different classes of workers. *Ford Motor Co.*, 345 U.S. at 338, *see also Bowerman*, 646 F.3d at 369; *Ratkosky*, 843 F.2d at 876. In deciding whether the union's actions were arbitrary, the Court must examine the union's decision-making process through the lens of the legal and factual context at the time of the actions in question to determine whether or not the union acted "[]logically." *O'Neill*, 499 U.S. at 79. Essentially, courts ask *why* the union made the decision that it did and only find a breach of the duty of fair representation when the answer is absurd (wholly irrational or without any explanation), hostile or discriminatory towards any member, or otherwise demonstrates that the union acted in bad faith. *See, generally, O'Neill*, 499 U.S. 65; *Ford Motor Co.*, 345 U.S. 330; *Bowerman*, 646 F.3d 360; *Ratkosky*, 843 F.2d 869. The plaintiff carries the "demanding burden" of showing the union acted outside of its wide range of reasonableness. *Bowerman*, 843 F.2d at 369.

Here, Jones only has to "nudge" her claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. In her complaint, Jones alleges that MEBA arbitrarily agreed to the Side Letter that stipulates that a number of protections described in the CBA do not apply to Chief Stewards, most notably the protection from discharge without just cause and access to grievance procedures related to termination. Jones's claim is plausible if it is "so far outside a wide range of reasonableness that it is wholly irrational" for MEBA to negotiate an agreement that excludes Chief Stewards, who pay the same dues as other classes of workers, from

numerous "fundamental terms and conditions of employment," including protection from discharge without just cause. (ECF No. 28, PageID.106.)

There is nothing in the Complaint, CBA, or Side Letter that explains why MEBA and Interlake made such a stark distinction between Chief Stewards and other classes of employees. Without any insight into Defendants' justification for making such a distinction and bargaining away these protections for some members and reserve them for others, the agreement does not appear rational, especially considering that all members, including Jones, appear to pay the same dues. The circumstances are particularly troubling if MEBA has been wrongfully charging members for copies of their CBA. If Jones's standalone duty of fair representation claim was not barred by the statute of limitations, the undersigned would not grant the motion to dismiss concerning the standalone duty of fair representation claim.

## VII. Section 414 Violation Analysis

Drawing all factual inferences in favor of Jones, the undersigned finds that MEBA should not have charged her for a copy of the CBA and Side Letter. Unions have a statutory duty to provide copies of collective bargaining agreements, and other union documents, "to any employee who requests such a copy and whose rights as such [an] employee are directly affected by such agreement[s]." 29 U.S.C. § 414. There is nothing within the statute that directly addresses the legality of charging a reasonable fee to cover the costs of producing and providing a copy of such documents, and there is no case law interpreting whether or not a reasonable fee could be allowed under the language of the statute. The Office of Labor-Management Standards has

issued guidance in their Interpretive Manual which states that in their opinion "the right to a copy of the [CBA] is unqualified and the union may not condition it upon payment of a fee however small." U.S. Dep't of Labor, Office of Labor-Mgmt. Standards, OLMS Interpretive Manual § 110.410 (Dec. 2016).[10] The Sixth Circuit has held that since guidance such as this is "not subject to the rigors of the Administrative Procedure Act," it is neither "controlling [n]or entitled to deference." *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 531-532 (6th Cir. 2017). However, these "these explanatory guidelines do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance… depend[ing] upon the thoroughness evident in its consideration." *Id.* (internal citations omitted).

Although Jones was fired before being charged for a copy of the CBA, she is considered both an "employee" and a "member" for the purposes of this claim. 29 U.S.C. § 402. As such, MEBA owed her a duty to "provide" a copy of the CBA once she requested it. 29 U.S.C. § 414, *see also Acosta v. Local Union 29, Unite Here*, 260 F.Supp.3d 94 (Dist. Mass. 2017). Whether a duty to "provide," in the context of the statute, means a duty to provide free of reasonable cost appears to be a novel issue.[11]

---

[10] https://www.dol.gov/olms/regs/compliance/interp_manual/100_IM_MemRights.htm

[11] Only a handful of cases in the Sixth Circuit directly involve 29 U.S.C. § 414, none of which are on point. *See, e.g.*, *Baker v. General Motors Corp.*, 745 F.Supp. 1275 (N.D. Ohio, 1990) (dismissing the § 414 claim as untimely), *Baggarly v. United Steelworkers of America, etc.*, 1991 WL 340302 (W.D. Ky. Apr. 16, 1991)(finding that § 414 was inapplicable because no employee affected by the agreement ever requested a copy of the agreement), and *Murphy v. Local Union No. 18 et. al*, No. C 73-1336, 1978 WL 13999 at *65 (N.D. Ohio, 1978) (declining to apply § 414 where the "plaintiff was denied access to [documents] due to his own unreasonable and disruptive conduct"). Searches outside of the Sixth Circuit yielded similar results.

Courts dealing with ambiguous language in 29 U.S.C. § 414 and surrounding provisions, collectively known as the Labor-Management Reporting and Disclosure Act's (LMRDA) "Bill of Rights," often turn to the purpose of the LMRDA to guide their interpretations. *Murphy v. Local Union 18 et al.*, No. C 73-1336, 1978 WL 13999 at *55 (N.D. Ohio July 18, 1978) (citing a string of cases that "unanimously" interpret "discipline" in deference to "patent legislative intent"); *Grand Lodge of Intern. Ass'n of Machinists v. King*, 335 F.2d 340, 341 (9th Cir. 1964); *Price v. Int'l Bhd. of Teamsters Chauffeurs, Warehousemen, and Helpers of America*, 457 F.2d 605, 609 (3d Cir. 1972); *Colpo v. General Teamsters Local Union 326*, 512 F.Supp. 1093, 1095 (Dist. Del. 1981).

The section currently at issue intends to "permit employees to be able to enforce their rights under the contract by allowing them to see what benefits they were entitled to under the agreement." *Price*, 457 F.2d at 610. More generally, the LMRDA was considered and passed by Congress explicitly in the interest of protecting employees and workers, and intends to hold "labor organizations, employers, and their officials" to the "highest standards of responsibility and ethical conduct." 29 U.S.C. § 401. In light of these goals, the undersigned finds the Department of Labor's guidance persuasive; an employee should not have to pay a fee to their union in order to access the contents of their CBA for the first time. The undersigned declines, at this time, to draw conclusions regarding whether an employee who has access to his CBA or has been issued a copy in the past might reasonably be expected to cover printing fees, postage, etc., if he then request

additional or multiple physical copies. *See* U.S. Dep't of Labor, Office of Labor-Mgmt. Standards, OLMS Interpretive Manual § 110.420 (Dec. 2016). Drawing all inferences in favor of Jones, the undersigned concludes that Jones's claim under 29 U.S.C. § 414 should proceed.

**VIII. State Law Claims**

The undersigned finds that where Jones alleges facts implicating state law contract claims, they are pre-empted by the federal law described above. State law claims that would require the Court to interpret the CBA and Side Letter are pre-empted by federal law and by the § 301 claim. *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1036-37 (6th Cir. 1989). For state law claims that are not based on the CBA, the Court would apply Michigan law, which presumes at-will employment. *Rood v. General Dynamics Corp.*, 507 N.W.2d 591, 597-98 (Mich. 1993).

The Supreme Court has held that any state law claims that "depend[] upon the meaning of a collective-bargaining agreement" are pre-empted by federal law, i.e., § 301. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988). Thus, any state law claims that Jones may assert cannot rely on interpretation of the CBA or Side Letter. While Jones includes violations of "state contract law" in her complaint based on "past practices," she does not elaborate on this violation either in her complaint or her briefs. (ECF. No. 28, PageID.150.) The undersigned finds that Jones does not present facts sufficient to support a claim alleging any state law violation independent of her rights under the CBA or any federal employment

regulation that would entitle her to relief for wrongful termination of her at-will employment.

## IX. Recommendation

The undersigned respectfully recommends that the Court GRANT IN PART Defendants' motions to dismiss, dismissing (1) Jones's hybrid § 301 claim against both Defendants for failure to state a claim, (2) Jones's standalone duty of fair representation claim against Defendant MEBA for being untimely, and (3) Jones's state law claims against both Defendants for failure to state a claim. The undersigned recommends that the 29 U.S.C. § 414 fee-charging claim against Defendant MEBA, as the sole defendant, be allowed to proceed.

Dated: August 5, 2020

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).