UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KRISTA JONES,

        Plaintiff,

                                  CASE NO. 2:19-CV-255

v.

                                  HON. ROBERT J. JONKER

INTERLAKE STEAMSHIP COMPANY,
*et al.*,

        Defendants.
_____/

## ORDER on REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff Krista Jones was a cook on the *Stewart J. Cort*, one of defendant Interlake's iron ore freighters. Interlake fired plaintiff after she missed the boat in Superior, Wisconsin, on May 29, 2019. Plaintiff was a member of defendant Marine Engineers' Beneficial Association at the time. She tried to grieve her termination, but MEBA told her there was no available claim under the applicable labor contract because years before plaintiff joined the union, Interlake and MEBA had negotiated a Side Letter excluding cooks from the just cause and grievance protections of the Collective Bargaining Agreement. Plaintiff filed this action to contest the matter. All parties have moved to dismiss, or for complete or partial summary judgment. ECF Nos. 32, 33 and 37.

The case originated in this District's Northern Division, which has no resident District Judge. The Court's resident Magistrate Judge prepared a comprehensive Report and Recommendation addressing the motions. ECF No. 52. The Magistrate Judge recommended dismissing the hybrid Section 301 breach of contract/duty of fair representation claim against

Interlake and MEBA. He also recommended dismissing a separate duty of fair representation claim against MEBA based on the negotiation of the Side Letter itself. Finally, he recommended letting survive for the time being plaintiff's claim that MEBA violated 29 U.S.C. Sec. 414 by refusing to provide her a free copy of the CBA and Side Agreement. All parties filed either objections to the R&R, or responses to the objections. The Court is reviewing the matter *de novo* under Rule 72(a). After *de novo* review, the Court concludes that both defendants are entitled to dismissal or summary judgment on all claims.

## FACTUAL BACKGROUND

Plaintiff began working for Interlake in cooking related roles as early as 2011, but she did not immediately join MEBA or even fill a bargaining unit position. Interlake promoted plaintiff to Chief Steward in March of 2018. Plaintiff joined MEBA at the time of her promotion. At the time, the CBA and Side Letter from 2013 were in effect. There were no relevant changes to the CBA or Side Letter after plaintiff joined MEBA.

The parties agree the *Cort* left port without plaintiff on May 29, 2019, but disagree on whether plaintiff was justified in missing the boat in Wisconsin. No one disputes that the posted sailing time was 6:00 P.M., and that plaintiff did not arrive until 6:50 P.M. However, plaintiff says she left the boat about twenty minutes before posted sailing to buy a replacement clock for one that broke in the kitchen, and was assured by the wheelsman before she left that the boat would not actually leave before 7:00 P.M. She left her number with the wheelsman, she says, and asked for a warning call at least an hour before departure—a call that never came. Plaintiff says termination under these circumstances was not with just cause, and that she should be able to grieve the termination under the CBA.

Defendants disagree with plaintiff's exonerating explanation, but they are willing to assume its truth for purposes of the present motion. In their view, they are still entitled to judgment as a matter of law because the 2013 Side Letter expressly excludes plaintiff's position of Chief Steward from the just cause and grievance protections of the CBA. Plaintiff agrees that the Side Letter, by its terms, precludes these protections for her job classification, but argues that MEBA should never have agreed to those terms. The R&R quotes the key passages from the CBA and reproduces the entire Side Letter. ECF No. 52, at PageID.373-74. The Side Letter was signed November 22, 2013, and amended the CBA in effect as of August 1, 2013. There is no factual dispute that these are the governing documents, and that they were in effect when Interlake fired plaintiff and MEBA declined to bring a claim on her behalf.

## THE CLAIMS

*1.    Hybrid Breach of Contract/Duty of Fair Representation*

Plaintiff's first claim is a hybrid one under *DelCostello v. Int'l Board of Teamsters*, 462 U.S. 151 (1983). To prevail, she must show both that Interlake breached a contractual provision by firing her, and that MEBA breached its duty of fair representation in handling, or refusing to handle, a claim. Plaintiff cannot do that here because she can point to nothing in the controlling terms of the CBA and Side Letter even arguably breached when Interlake decided to terminate her. She asserts the termination was unjust, but even assuming it was, there was no effective provision of the CBA that precluded termination of the Chief Steward, justly or not. True, the CBA generally provided just cause protection for employees. But the Side Letter unambiguously excluded the Chief Steward classification from that protection. Without any contractual provision even arguably violated, plaintiff cannot succeed on her hybrid claim based on the authority cited in the R&R.

3

*2.     Independent Duty of Fair Representation*

This segues to plaintiff's next claim, which is that MEBA independently breached its duty of fair representation to her by agreeing to the Side Letter in the first place. The duty of fair representation applies to negotiation of contractual terms, as well as to administration of the contract terms. *Air Line Pilots Ass'n, International v. O'Neill*, 499 U.S. 65, 77 (1991). Plaintiff argues that the just cause job protection and a meaningful grievance process are fundamental protections that union members expect, and that MEBA breached its duty of fair representation by agreeing to exclude Chief Stewards from those protections.

As the R&R notes, this would make for an interesting examination on the merits. Plaintiff's allegations are certainly plausible on their face. And yet, one can also imagine why cooks on a freighter with just cause job protection could create significant practical problems. Food and drink on long and barren voyages are one of the few pleasures for the crew, and both management and other union members may have an entirely valid interest in making sure firing and replacing unpopular cooks is quick, smooth and unreviewable (apart from generally applicable anti-discrimination laws not at issue in this case).

But there is no opportunity to explore the merits in this case because plaintiff's claim—even assuming it is at least *Twombly*-plausible—is time-barred. The limitations period for fair representation claims is a very short six-month period under *DelCostello.* ECF No. 52, at PageID.376-77 (citing authority). It normally begins to run at the time of the negotiation at issue. *Ratkosky v. United Transp. Union*, 843 F.2d 869 (6th Cir. 1988). In this case, that means the limitation period presumptively began to run back in November of 2013 when Interlake and MEBA signed the side letter. Obviously, the 6-month period from the date of negotiation ran long before plaintiff filed this action in November of 2019.

4

According to plaintiff, though, the limitations period did not start running for her back in November of 2013.  She says she did not even join the union until March of 2018[1], and that she was unaware of the specifics of the CBA and Side Letter until she paid the $25 fee MEBA demanded before giving her a copy of these documents after her termination.  In plaintiff's view, the limitations period should not begin running for her before she got those copies. The Court disagrees.

It is true that a reasonable discovery rule applies to the normal accrual rule for fair representation claims based on conduct during contract negotiations.  But this is an objective inquiry, not a subjective one.  Moreover, members of unions are normally charged with knowledge of the applicable contract documents.  The R&R cites the controlling authority.  ECF No 52, at PageID.377.  This is no different than the ordinary rule in contract cases that holds parties to their written agreement regardless of whether they actually read everything they signed.  There is no objective reason of record here why plaintiff should not be charged with knowledge of the CBA and Side Letter, at least by the time she decided to join the union formally in March of 2018.  That would have been the natural time for her to review the applicable terms and make a decision about whether to join, or not to join, MEBA.  And she did not file her claim here within 6 months of March 2018.

Plaintiff further objects that in this case MEBA put barriers in her way of getting access to the documents because they required her to pay a $25 fee to get copies of the documents.  The R&R treated this as a request for equitable tolling of the limitations period.  In the Court's view, the R&R properly rejected the theory.  It is not facially unreasonable to require a nominal fee to

---

[1] MEBA does not seem to dispute this, but does argue that plaintiff was subject to the CBA—even if not as a union member--as early as 2014 when she worked as a relief cook, which is a bargaining unit position.  In MEBA's view, she was on notice of the CBA and Side Letter no later than that time.

reproduce a copy of contractual documents. And here there is nothing of record that suggests the $25 fee was excessive for someone who wanted her own copies of the documents.[2] The CBA and Side Letter here ran to about 50 pages, ECF No. 32-1, 32-2, which means the charge amounted to about .50 cents a page. That is the same rate this Court currently charges members of the public for photocopies of publicly filed documents. The Court agrees with the Magistrate Judge that there is no factual basis for any possible equitable tolling theory based on fraudulent concealment.

      Plaintiff also attempts to avoid the limitations problem by asserting that this is really a case of a continuing violation of the duty of fair representation. In her view, even though the negotiation itself happened back in 2013, the violation refreshes every time MEBA applies the terms of the Side Letter. The law recognizes a continuing violation theory in some cases, but not one like this where the root of the alleged wrong is the negotiation of the Side Letter itself in 2013, and all MEBA did in 2019 is apply the plain language of the Side Letter and CBA. The R&R cited the relevant authority. ECF No. 52, at PageID.379-80. Any other rule would mean that fair representation claims based on a negotiation would refresh and revive without end, which is directly contrary to the goals of finality in limitations period generally, and in CBA negotiation and management particularly.

      In the Court's view, accepting plaintiff's theory of continuing violation here would be particularly troublesome because plaintiff was not a member of the union at all, and was not even arguably covered by the CBA as a non-union member, at the time of the negotiation in November of 2013. On what theory can she even claim basic Article III injury-in-fact from a negotiation that MEBA managed when it owed absolutely no duty of any kind to her? On plaintiff's theory, even

---

[2] Moreover, the Court has seen nothing of record indicating that MEBA tried to prevent plaintiff from reviewing MEBA's own copy of the documents at the union office, either before or after her termination. Nor, as already noted, is there anything of record to explain why plaintiff did not ask to see the documents before deciding the join the union in March of 2018.

if everyone to whom MEBA owed duties at the time remains perfectly happy with the trade-offs, she may choose to join the union after the negotiation is complete and re-open the issue by claiming injury from things that happened before the union owed her anything. The Court does not believe fair representation can possibly stretch to that kind of scenario.

3.      *Section 414 Claim*

Plaintiff's only other federal claim is under 29 U.S.C. § 414, which guarantees employees access to controlling contract documents. Plaintiff says MEBA violated this Section by charging her the $25 fee for her copy. The Court disagrees. There is no claim MEBA failed to maintain a copy of the document for inspection at its offices, or that it refused to provide plaintiff access to the terms in any other way. The sole claim is that MEBA insisted on a $25 fee before making a copy of the 50 pages for her. The Court does not read Section 414 to prevent a union from charging a reasonable copy fee.[3] The nominal and reasonable fee (amounting to about 50 cents a page) imposes no unreasonable barrier to access.[4]

Moreover, the Court is inclined to agree with MEBA that Plaintiff does not have a private right of action to enforce Section 414, which appears to delegate enforcement to the Secretary of Labor: "[S]ection 440 of this title shall be applicable in the enforcement of this section." 29 U.S.C. § 414. Section 440 expressly gives the Secretary of Labor authority to bring actions for appropriate relief. 29 U.S.C. Sec. 440. *See also Carothers v. McCarthy*, 705 F. Supp. 687, 694 n.8 (D. D.C. 1989) (noting that "it appears that the sole remedy for a violation of [Section 414] is a civil action by the Secretary of Labor under 29 U.S.C. Sec. 440"). The Secretary has regularly brought Section 414 enforcement actions. *See, e.g. Acosta v. Local Union 26, Unite Here*, 895 F.3d 141 (1st Cir.

---

[3] The R&R notes that some agency guidance documents indicate that even a nominal fee is inappropriate. Guidance documents are not binding, and in this case are unpersuasive.
[4] This disposition moots plaintiff's pending Motion to Compel. ECF No. 61.

2018) (distinguishing required access from required copies of certain documents); *Dole v. Local 427, International Union*, 894 F.2d 607 (3d Cir. 1990) (finding no statute of limitations on the Secretary's Section 414 enforcement action).

This may be why neither the Magistrate Judge, the parties themselves, nor this Court have been able to find more than a handful of reported private Section 414 cases.[5] And of the few identified, even fewer analyze the private right of action question. There is nothing that does so within the Sixth Circuit. There is no need to resolve the matter here because the Court is satisfied that even assuming a private right of action, it would fail on the merits because nothing in Section 414 precludes a union from charging a reasonable copying fee for members who want their own printed document copies to take with them.

## CONCLUSION

Based on *de novo* review, the Court finds that Interlake and MEBA are entitled to judgment as a matter of law dismissing all plaintiff's claims against them.[6] The defense motions, ECF Nos. 32, 33, are **GRANTED**. The plaintiff's motion, ECF No. 37, is **DENIED**. Accordingly, judgment will enter in favor of defendants and against plaintiff. The R&R is adopted only to the extent consistent with this Opinion and is rejected in all other respects.

Dated:  November 30, 2020          /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    CHIEF UNITED STATES DISTRICT JUDGE

---

[5] In contrast to the dearth of private Section 414 cases, there are a myriad of cases under Section 412 for enforcement of other provisions of the labor "Bill of Rights," none of which reference enforcement by the Secretary. *See, e.g.,* 29 U.S.C. § 411. These provisions and cases necessarily rely for enforcement on private actions authorized under 29 U.S.C. § 412, not on actions by the Secretary under Section 440.

[6] Moreover, Section 301 operates to pre-empt any state law claims plaintiff has attempted to plead.